## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC GROVE** | : | |
| 147 1st Street | : | |
| Hustontown, PA 17229 | : | |
| | : | **Civil Action** |
| **and** | : | |
| | : | **No.:** |
| **COOL FAT BURNER, LLC** | : | |
| 147 1st Street | : | |
| Hustontown, PA 17229 | : | |
| | : | |
| *Plaintiffs* | : | **Jury Trial Demanded** |
| | : | |
| v. | : | |
| | : | |
| **WAYNE HAYES** | : | |
| 34 Schubert Court | : | |
| Irvine, CA 92617 | : | |
| | : | |
| **and** | : | |
| | : | |
| **COLD SHOULDER VEST, LLC** | : | |
| 34 Schubert Court | : | |
| Irvine, CA 92617 | : | |
| *Defendants* | : | |

## COMPLAINT

Plaintiffs Eric Grove and Cool Fat Burner, LLC, ("Plaintiffs"), by and through

undersigned counsel, Bochetto & Lentz P.C., by way of Complaint against Defendants Eric

Grove and Cold Shoulder Vest ("Defendants") state as follows.

### *Jurisdiction & Venue*

1.      This Court has original jurisdiction of Plaintiff's Lanham Act claims under 15

U.S.C. § 1121 and 28 U.S.C. § 1331.

2.      Venue is proper in this District under 28 U.S.C. § 1391 (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the geographical region embraced by the Middle District of Pennsylvania.

*The Parties*

3.      Plaintiff Eric Grove ("Grove") is an adult individual who resides at 147 1st St., Hustontown, PA 17229.

4.      Plaintiff Cool Fat Burner, LLC ("CFB") is a Limited Liability Corporation with its principal place of business located at 147 1st St., Hustontown, PA 17229.

5.      Defendant Wayne Hayes ("Hayes") is an adult individual who resides at 34 Schubert Ct., Irvine CA 92617.

6.      On information and belief, Defendant Cold Shoulder Vest, LLC ("CS"), which conducts business in Irvine, California, is a California limited liability company owned, managed, or operated by Wayne Hayes and his business partners with a principal place of business at 34 Schubert Ct., Irvine CA 92617.

7.      This Court has personal jurisdiction over Hayes and Defendant CS in that, upon information and belief, they regularly conduct business in Pennsylvania, sell, distribute, and ship product in Pennsylvania, and direct advertisements, including the false and misleading advertisements at issue herein, to Pennsylvania customers.

## FACTUAL BACKGROUND

8.      Grove is the owner of CFB and the developer of the "Cool Fat Burner" ("CFB").

9.      The Cool Fat Burner is a vest that uses cold thermogenesis technology to burn calories in the wearer of the vest.

10.     Grove and CFB devoted significant time and funding into the research of cold thermogenesis, including studies they personally spearheaded.

11.     Grove used this research to develop the vest sold by his company, CFB.

12.     The CFB vest cools the body temperature of the wearer down, which, through the cold thermogenesis process, forces the body to burn calories in order to generate heat as part of the natural process of the body seeking to maintain normal body temperature.

13.     CFB discovered, through its research, that without inducing shivering the caloric burn in the wearer is negligible and will not induce weight loss.

14.     The CFB vest was developed to occasionally induce shivering in the wearer.

15.     CFB began selling its vest online on or about September 2012.

16.     Upon information and belief, Hayes and CS began marketing and selling the "Cold Shoulder" vest over the internet sometime between late 2013 and 2014.

17.     As set forth herein, Hayes and CS have used intentionally falsified, inaccurate and misleading data and representations to promote the sale of the Cold Shoulder vest to the public.

18.     For example, Hayes and CS falsely claimed on their own website that, when worn for two hours a day, the vest can burn 500 calories under a non-shivering or "mild cold exposure." (Exhibit "A").

19.     "Mild cold exposure" is a term used to indicate cold exposure that **does not** induce shivering.

20.     Hayes also falsely claimed as part of his Kickstarter campaign (a website used for crowd-funding) that the Cold Shoulder vest burned "the equivalent" of 500 calories a day under "mild cold exposure" conditions. (Exhibit "B").

21.    Hayes further falsely claimed on his IndiGoGo Campaign Website (another crowd-funding tool) that the Cold Shoulder vest burned 500 calories and/or a pound of fat per week under the same "mild cold exposure" conditions. (Exhibit "C").

22.    Hayes published additional false commentary on his second Kickstarter campaign, claiming that the Cold Shoulder vest caused one to two pounds of fat loss per week, and characterized this as burning 500 to 1000 calories a day under "mild cold exposure" conditions. (Exhibit "D").

23.    Hayes also falsely advertised the Cold Shoulder vest as burning 250 calories per hour in the Atlantic magazine under "mild cold exposure" conditions. (Exhibit "E").

24.    Hayes has also marketed the Cold Shoulder vest as burning 500 calories a day in the Chicago Tribune. (Exhibit "F").

25.    Hayes marketed the CS vest as burning 500 calories a day (when worn for a period of 2–3 hours a day) in Facebook posts and Ads. (Exhibit "G").

26.    Hayes marketed the CS vest as burning 500 calories a day on the Daily Mail UK website. (Exhibit "H").

27.    Hayes sent out a PR solicitation email to PR firms and media outlets where he claimed that "[t]he original vest was estimated to burn up to 500 calories a day when worn twice daily, our new Classic 2.0 vest that is powered by CryoMax Gel Ice can potentially double this amount of calories burned." (Exhibit "I").

28.    CS's listing on Amazon claimed that it would burn 500 calories. (Exhibit "J").

29.     Contrary to Hayes' and CS's public advertisements about the efficacy of their Cold Shoulder vest, it is not scientifically possible to induce that level of caloric burn under "mild cold exposure" conditions i.e., without inducing shivering.

30.     The claims made by CS are directly contradicted by over fifty years of established science on cold exposure. (Exhibit "K" at 2, 15, 1505).

31.     Mild cold exposure through a vest is extremely unlikely to burn 500 calories within a 24-hour period, and it certainly cannot burn 500 calories in two hours, as Hayes states.

32.     In fact, Plaintiffs have commissioned an independent study, at a cost of $10,000, to determine the validity of Hayes' and CS's claims that the Cold Shoulder causes a 500 caloric burn under non-shivering or "mild cold exposure" conditions.  (Exhibit "L").

33.     This study has categorically proven that Defendants' public representations are completely false.  *Id.*

34.     The study concluded that:

a.     "Dr. Wayne Hayes, creator of The Cold Shoulder Burning Vest (CS), promotes the effectiveness of the CS partly through a non-peer reviewed investigation, and no link to any publications detailing the methodology and results of said study is available. On Dr. Hayes' website, 1800icevest.com, he states, 'I have put it [CS] to the scientific test and proved this vest's efficacy in controlled clinical trials.'"

b.     "Firstly, the study cited and purportedly conducted by Dr. Hayes cannot be recognized as 'scientific' nor as a 'controlled clinical

trial.' A scientific study requires the inclusion of scientific methodology and the approval of said methodology by the Institutional Review Board, a federally mandated ethics board for the protection of human subjects."

c.   The purported study also fails to uphold the necessary requirements to be deemed a clinical trial. For a study to be officially considered a randomized controlled clinical trial, the study protocol must be registered on clinicaltrials.gov which is a service of the U.S National Institutes of Health. All registered clinical trials are provided a Clinical Trial Registry Number upon successful registration. **It is with certainty that the study cited by Dr. Hayes is not registered as a clinical trial and therefore the aforementioned statement by Dr. Hayes is largely inaccurate and would be disproved by the scientific community**." (Emphasis added).

d.   "Dr. Hayes stated, 'Wearing the Cold Shoulder at mild, comfortable, non-shivering cold exposure for 2 hours per day burns 500 calories in that day.' These claims are largely unsubstantiated by empirical studies presented in peer-reviewed scientific articles."

e.   "Upon comprehensive searches on national and international databases of indexed peer reviewed scientific journal articles

6

(i.e. MEDLINE and Pubmed), the aforementioned statements are highly inaccurate and uncorroborated. The current scientific understanding on cold-induced thermogenesis is supported by a relatively substantial body of evidence; however, the effects of repeated cold exposure on weight or fat loss remains equivocal."

f. "In fact, those studies that reported significant non-shivering thermogenesis failed to demonstrate changes in body composition. For instance, [two different studies] showed no changes in body composition following long-term cold exposure."

g. "Also, Dr. Hayes repeatedly references data from previous scientific literature to support the efficacy of the Cold Shoulder, however none of the referenced studies utilized a cooling vest to test the effects of cold exposure on thermogenic and metabolic responses. These studies, like the work of Anouk A.J.J van der Lans et al. (2013), did not utilize a cooling apparatus like the Cold Shoulder."

h. "However, Dr. Hayes utilizes the results of this study to assure customers that the Cold Shoulder is 'backed by science', where in fact no peer-reviewed studies have tested the Cold Shoulder."

i. "Dr. Hayes also claims that 'users don't care about calories per hour, or even calories per day. Users care about fat loss.' This

7

> statement is largely misleading and inaccurate considering that
>
> a negative energy balance (energy expenditure > energy intake)
>
> is the ONLY biological stress that induces molecular to cellular
>
> changes in adipose tissue underlying fat loss."

35.    Aside from making knowingly and scientifically provably false claims about the efficacy of the Cold Shoulder vest, Hayes has also made many other false public statements about his background and credentials and about Plaintiffs and their Cool Fat Burner vest.

36.    For example, Hayes has publically advertised that he is a former "NASA scientist" on various online platforms in an effort to persuade consumers of the validity of his research. (See, e.g., Exhibit "A," Exhibit "F," and Exhibit "G," Exhibit "H," Exhibit "I," Exhibit "J", Exhibit "M").

37.    Hayes, however, is not and never was a NASA scientist.

38.    Rather, Hayes was a "collaborator," essentially a visitor with security clearance, in an unpaid position.

39.    Hayes also directly attacked the Cool Fat Burner vest and Plaintiffs numerous times with knowingly false statements, causing further damage and loss of profits to CFB.

40.    On December 26, 2015, Hayes posted an "open letter" on Kickstarter directed to Plaintiff Eric Grove.   (Exhibit "N").

41.    The "Open Letter" post made false claims about the Cool Fat Burner Vest and Eric Grove personally.

42.    The false claims included: "Cool Fat Burner's ice is so cold that it may be dangerous"; "[Eric Grove's] packs may carry a risk of frostbite"; "[Eric Grove] openly

recommends using his ice packs at home to perform a dangerous tissue-killing procedure. . . ";
"The Cool Fat Burner's ice packs also use some mysterious substance that nobody knows is safe."

43.    Hayes also published false and misleading statements regarding the Cool Fat Burner vest to customers via e-mail. The false statements included "Yes, [Eric Grove's] vest burns more calories, as long as you're willing to risk (a) frostbite, and (b) the non-FDA cleared, possibly poisonous (battery fluid one of his users says) he uses for his gel, and the paper-thin flimsy fabric he uses. So your choice: hospital-tested, safe and effective (mine) or questionable unsafe chemicals and risk of frostbite (his)." (Exhibit "O").

44.    The above referenced false and misleading statements have induced customers to not purchase the Cool Fat Burner vest, and these customers have even expressly stated that they will not buy the CFB vest because of Hayes' statements. (Exhibit "P").

## COUNT I — Lanham Act Violation:

### Defendants' Statements Regarding Defendants' Product

### (All Plaintiffs v. All Defendants)

29.    Plaintiffs incorporate by reference each of the preceding Paragraphs of this Complaint.

30.    Defendants have made literally false and misleading representations and descriptions of facts, each of which led to actual deception of the consumer base for cold thermogenic vests in violation of the Lanham Act.[1]

31.    Defendants have made false and misleading representations and descriptions of facts, each of which has maligned and disparaged the quality, accuracy, and legitimacy of Plaintiff's services, products, and information.

32.    Each of Defendants' statements regarding the CS vest identified above "misrepresents the nature, characteristics, [and] qualities" of Defendants' "goods, services, or commercial activities."

34.    Defendants' false and misleading representations and descriptions of fact have caused and are likely to continue causing consumer confusion, mistake, or deception as to the quality, accuracy, and legitimacy of Defendants' services, products, and information.

35.    Defendants' false and misleading representations and descriptions of fact have caused and are likely to continue causing consumer confusion, mistake, or deception as to the quality, accuracy, and legitimacy of Plaintiffs' services, products, and information.

---

[1] The Lanham Act's relevant section provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

36. Defendants' false and misleading representations and descriptions of fact have resulted in actual deception of their intended audience and have a tendency to deceive a substantial portion of the intended audience.

37. Defendants' false and misleading statements are material in that they are have already influenced and continue to be likely to influence consumers' purchasing decisions.

38. Defendants' false and misleading statements of fact involve and are made in connection with interstate commerce, and the product which they falsely advertise travels in interstate commerce.

39. Defendants' false and misleading statements have caused a likelihood of injury to Plaintiff in the form of lost sales and lost media and advertisement opportunities.

40. Plaintiffs' injury flows directly from the false and misleading statements by Defendants in the course of their commercial activity.

41. Plaintiffs have no adequate remedy at law and are entitled to preliminary and permanent injunctive relief.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in their favor and against defendants Wayne Hayes and Cold Shoulder Vest, LLC, award Plaintiffs damages in excess of the $150,000 arbitration threshold, including Defendants' profits, three times Plaintiffs' actual damages, Plaintiffs' attorneys' fees and costs incurred in bringing and maintaining this action, and such other relief that the Court finds just and equitable.

### COUNT II — Lanham Act Violation:

### Defendants' Statements Regarding Plaintiffs' Product

### (All Plaintiffs v. All Defendants)

11

33. Plaintiffs incorporate by reference each of the preceding Paragraphs of this Complaint.

34. Defendants have made literally false and misleading representations and descriptions of facts regarding Eric Grove and the Cool Fat Burner vest, each of which led to actual deception of the consumer base for cold thermogenic vests in violation of the Lanham Act.

35. Defendants have made false and misleading representations and descriptions of facts, each of which has maligned and disparaged the quality, accuracy, and legitimacy of Plaintiff's services, products, and information.

36. Each of Defendants' statements regarding the CS vest identified above "misrepresents the nature, characteristics, [and] qualities" of Plaintiffs' "goods, services, or commercial activities."

42. Defendants' false and misleading representations and descriptions of fact have caused and are likely to continue causing consumer confusion, mistake, or deception as to the quality, accuracy, and legitimacy of Plaintiffs' services, products, and information.

43. Defendants' false and misleading representations and descriptions of fact have resulted in actual deception of their intended audience and have a tendency to deceive a substantial portion of the intended audience.

44. Defendants' false and misleading statements are material in that they are have already influenced and continue to be likely to influence consumers' purchasing decisions.

45. Defendants' false and misleading statements of fact involve and are made in connection with interstate commerce, and the product which they falsely advertise travels in interstate commerce.

46.     Defendants' false and misleading statements have caused a likelihood of injury to Plaintiff in the form of lost sales and loss of good will.

47.     Plaintiffs' injury flows directly from the false and misleading statements by Defendants in the course of their commercial activity.

48.     Plaintiffs have no adequate remedy at law and are entitled to preliminary and permanent injunctive relief.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in their favor and against defendants Wayne Hayes and Cold Shoulder Vest, LLC, award Plaintiffs damages in excess of the $150,000 arbitration threshold, including Defendants' profits, three times Plaintiffs' actual damages, Plaintiffs' costs incurred in corrective advertising, Plaintiffs' attorneys' fees and costs incurred in bringing and maintaining this action, and such other relief that the Court finds just and equitable.


**COUNT III — Pennsylvania Common Law Unfair Competition Claim:**

**Defendants' Statements Regarding Defendants' Product**

**(All Plaintiffs v. All Defendants)**

37.     Plaintiffs incorporate by reference each of the preceding Paragraphs of this Complaint.

38.     Defendants have made literally false and misleading representations and descriptions of facts, each of which led to actual deception of the consumer base for cold thermogenic vests, resulting in unfair competition under Pennsylvania common law.[2]

39.     Defendants have made false and misleading representations and descriptions of facts, each of which has maligned and disparaged the quality, accuracy, and legitimacy of Plaintiff's services, products, and information.

40.     Each of Defendants' statements regarding the CS vest identified above "misrepresents the nature, characteristics, [and] qualities" of Defendants' "goods, services, or commercial activities."

49.     Defendants' false and misleading representations and descriptions of fact have caused and are likely to continue causing consumer confusion, mistake, or deception as to the quality, accuracy, and legitimacy of Defendants' services, products, and information.

50.     Defendants' false and misleading representations and descriptions of fact have caused and are likely to continue causing consumer confusion, mistake, or deception as to the quality, accuracy, and legitimacy of Plaintiffs' services, products, and information.

51.     Defendants' false and misleading representations and descriptions of fact have resulted in actual deception of their intended audience and have a tendency to deceive a substantial portion of the intended audience.

---

[2] *See* Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F.Supp.2d 567, 582 (E.D. Pa. 2002), amended (June 28, 2002) ("The common law cause of action for unfair competition in Pennsylvania mirrors the Lanham Act's section 43(a) cause of action for unfair competition, except that under state law there is no requirement that the goods traveled through interstate commerce.").

52.     Defendants' false and misleading statements are material in that they are have already influenced and continue to be likely to influence consumers' purchasing decisions.

53.     Defendants' false and misleading statements have caused a likelihood of injury to Plaintiff in the form of lost sales and lost media and advertisement opportunities.

54.     Plaintiffs' injury flows directly from the false and misleading statements by Defendants in the course of their commercial activity.

55.     As a direct and proximate result of Defendants' misrepresentations, Plaintiffs sustained and will continue to sustain significant damages as described above.

56.     As a direct and proximate result of Defendants' misconduct, Plaintiffs are also entitled to treble damages, attorneys' fees, and cost of suit.

57.     Plaintiffs have no adequate remedy at law and are entitled to preliminary and permanent injunctive relief.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in their favor and against defendants Wayne Hayes and Cold Shoulder Vest, LLC, award Plaintiffs damages in excess of the $150,000 arbitration threshold, including Defendants' profits, three times Plaintiffs' actual damages, Plaintiffs' attorneys' fees and costs incurred in bringing and maintaining this action, and such other relief that the Court finds just and equitable.

## COUNT IV — Pennsylvania Common Law Unfair Competition Claim:

## Defendants' Statements Regarding Plaintiffs' Product

## (All Plaintiffs v. All Defendants)

41.     Plaintiffs incorporate by reference each of the preceding Paragraphs of this Complaint.

15

42.     Defendants have made literally false and misleading representations and descriptions of facts regarding Eric Grove and the Cool Fat Burner vest, each of which led to actual deception of the consumer base for cold thermogenic vests, resulting in unfair competition under Pennsylvania common law.

43.     Defendants have made false and misleading representations and descriptions of facts, each of which has maligned and disparaged the quality, accuracy, and legitimacy of Plaintiff's services, products, and information.

44.     Each of Defendants' statements regarding the CS vest identified above "misrepresents the nature, characteristics, [and] qualities" of Plaintiffs' "goods, services, or commercial activities."

58.     Defendants' false and misleading representations and descriptions of fact have caused and are likely to continue causing consumer confusion, mistake, or deception as to the quality, accuracy, and legitimacy of Plaintiffs' services, products, and information.

59.     Defendants' false and misleading representations and descriptions of fact have resulted in actual deception of their intended audience and have a tendency to deceive a substantial portion of the intended audience.

60.     Defendants' false and misleading statements are material in that they are have already influenced and continue to be likely to influence consumers' purchasing decisions.

61.     Defendants' false and misleading statements have caused a likelihood of injury to Plaintiff in the form of lost sales and loss of good will.

62.     Plaintiffs' injury flows directly from the false and misleading statements by Defendants in the course of their commercial activity.

16

63.    Plaintiffs have no adequate remedy at law and are entitled to preliminary and permanent injunctive relief.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in their favor and against defendants Wayne Hayes and Cold Shoulder Vest, LLC, award Plaintiffs damages in excess of the $150,000 arbitration threshold, including Defendants' profits, three times Plaintiffs' actual damages, Plaintiffs' costs incurred in corrective advertising, Plaintiffs' attorneys' fees and costs incurred in bringing and maintaining this action, and such other relief that the Court finds just and equitable.

Dated:  December 17, 2018

By:    */s/ Albert M. Belmont, Esquire*
       Albert M. Belmont, Esquire
       No.: 84817
       **BOCHETTO & LENTZ**
       1524 Locust Street
       Philadelphia, PA 19102
       (215) 735-9000
       abelmont@bochettoandlentz.com
       Counsel for Plaintiffs, Eric Grove
       *and Cool Fat Burner, LLC*